IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NYANIFY, INC. AND CHRISTOPHER ORLANDO TORRES, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, <br><br> Defendants. | Case No.: 21-cv-03680 <br><br> District Judge Rebecca R. Pallmeyer <br><br> Magistrate Judge Gabriel A. Fuentes |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT AND EXPEDITED DISCOVERY**

Plaintiffs Nyanify, Inc. and Christopher Orlando Torres ("Nyanify"), submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO") including a temporary injunction, a temporary asset restraint and expedited discovery.

**TABLE OF CONTENTS**

I. STATEMENT OF FACTS ................................................................................................... 1

    A. Plaintiff's Trademarks, Copyrights and Products ..................................................... 1

    B. Defendants' Unlawful Activities ................................................................................ 2

II. ARGUMENT ....................................................................................................................... 4

    A. The Standard for TRO and Preliminary Injunction ................................................. 5

    B. Nyanify Will Likely Succeed on the Merits ............................................................... 5

    C. There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief .......................................................................... 9

    D. The Balancing of Harms Tips in Plaintiff's Favor ................................................. 10

    E. Issuance of the Injunction is in the Public Interest and the Public Interest is Served by Entry of the TRO .................................................................................................. 11

III. THE EQUITABLE RELIEF NYANIFY SEEKS IS APPROPRIATE ..................................... 12

    A. An *Ex Parte* TRO Restraining Defendants Conduct is Appropriate ................... 12

    B. Preventing the Fraudulent Transfer of Assets is Appropriate ............................. 13

    C. Expedited Discovery is Appropriate ...................................................................... 14

IV. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ...................................... 15

V. CONCLUSION ................................................................................................................. 16

**MEMORANDUM OF LAW**

Defendants, without consent, have used infringing and counterfeit versions of Nyanify, Inc. and Christopher Orlando Torres's (collectively "Nyanify's" or "Plaintiff's") federally registered Asserted Trademarks (the "Asserted Trademarks") and copyrighted 2-D artwork (the "NYAN Cat Works") to sell, offer for sale, distribute, and advertise products purported to be authorized NYAN CAT products when they are not (the "Infringing Products"). Plaintiff respectfully requests that this Court issue an *ex parte* TRO to restrain Defendants' unlawful activities as provided in the proposed order submitted herewith.

I.     **STATEMENT OF FACTS**

    A.     **Plaintiff's Trademarks, Copyrights and Products**

Nyanify, Inc. acts as the sales, marketing, design and distribution arm for authorized NYAN CAT products. *See* the Declaration of Christopher Orlando Torres (the "Torres Decl."), ¶ 3. Nyan Cat is an 8-bit animation depicting a cat with the body of a breakfast pastry. *Id.* at ¶ 4.



While absurd themes like flying kittens and pastry cats have been around for some time, the surreal humor behind this particular combination has captivated YouTubers and online art communities, spawning fan illustrations, iOS / android App Store games, as well as user-interface designs across multiple platforms. *Id.* at ¶ 4.

Nyanify sells such products under the Asserted Trademarks, which have been in use since 2011. See D.I. 1-1, 1-2, 1-3 (Trademark Registrations attached as Exs. 1 – 3 to the complaint).

Plaintiff owns federal registrations for the Asserted Trademarks, including those corresponding to U.S. Trademark Registration Nos. 4376980, 4377351, and 4457316 (the "Registrations"). *Id.*, ¶ 5. The Registrations are valid, subsisting, and in full force and effect. *Id.* at 6. The Asserted Trademarks are distinctive and identify the merchandise as quality goods originating from Nyanify. *Id.*, ¶ 6-8.

Nyanify is also the owner of numerous copyright registrations for NYAN CAT-related 2-D artwork (hereinafter, the "NYAN CAT Works"). The NYAN CAT Works are the subject of several copyright registrations awarded by the United States Copyright Office, including those at registration numbers: VA 1-798-668; VA 1-798-676; VAu 1-085-556; VAu 1-085-557; VA 1-798-670; VAu 1-085-560; VA 1-798-673; VA 1-839-405; VAu 1-115-641; VA 1-839-409; VAu 1-115-636; VAu 1-085-559; VA 1-798-672; VAu 1-085-563; VA 1-798-674; VA 1-798-675; VAu 1-114-946 and VAu 1-063-390 (hereinafter, the "Copyright Registrations"). Copies of the copyright registrations are attached as Exhibit 5 to the Complaint. See D.I. 1-4.

B. **Defendants' Unlawful Activities**

The success of the NYANIFY brand has resulted in it being counterfeited, infringed and copied. *Id. at* ¶ 11. Nyanify has identified numerous interactive internet stores and marketplace profiles associated with the Defendant Internet Stores on third-party platforms such as Amazon, Wish, and Dhgate. See D.I. 3 (Schedule A to the Complaint). Defendants use the Defendant Aliases and the Defendant Internet Stores to advertise, offer for sale, sell, and import Infringing Products to consumers in this District and throughout the United States. Torres Decl., ¶¶ 11-13, Torres Ex. 1. (screenshots of Defendants selling Infringing Products).

U.S. Customs and Border Protection ("CBP") reports that the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2019 was over $1.5

billion, up from $1.4 billion in 2018. See Declaration of Matthew A. Werber ("Werber Decl."), ¶ 3, D.I. 1-5, p. 7. CBP also reports that over 90% of its intellectual property seizures correspond to smaller international mail and express shipments, such as those used by Defendants. *Id*., p. 12. A January 2018 report by the United States Government Accountability Office explains that "distribution of counterfeit goods harms the U.S. economy by stifling innovation, slowing economic growth, weakening the competitiveness of U.S. employers, and threatening American jobs." Werber Decl. ¶ 4, Ex. B.

Defendants go to great lengths to conceal their identities and often use multiple fictitious names (such as the Defendant Aliases) and seller profiles to register and operate their network of Defendant Internet Stores. Torres Decl., ¶ 15; Werber Decl., ¶ 6. The Department of Homeland Security ("DHS") reports in a January 2020 publication on counterfeiting that commonly owned and/or interrelated enterprises may have many online marketplace profiles that appear unrelated:

> Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated.

D.I. 1-6, p. 39. The similarities among the Defendant Internet Stores observed in Ex. 1 to the Torres Declaration suggest relationships among multiple marketplace accounts and Defendant Aliases. Torres Decl., ¶ 14. For example, many of the Defendant Internet Stores use identical or equivalent language and images to sell what appear to be similar, if not identical, Infringing Products. *Id.*, Ex. 1. The screenshots of Ex. 1 to the Torres Declaration also show identical or similarly priced items and volume sales discounts, common payment methods and lack of contact information. Such evidence suggests relationships among the Defendants and that Infringing

Products sold under different Defendant Aliases, were manufactured by and come from a common source. Torres Decl., ¶ 14 - 16.

Defendants' access to multiple seller profiles, bank accounts and payment services and their manner of conducting business anonymously from overseas over the Internet, provide Defendants a variety of common tactics to evade enforcement efforts. *Id.*; Werber Decl., ¶¶ 5-7. For example, having access to multiple online marketplace accounts (such as those shown in Ex. 1 to the Torres Declaration) provide Defendants an opportunity to change aliases and profiles once they receive notice of a lawsuit. *Id*. Similarly, their access to multiple bank accounts and payment services provide opportunities to move funds to evade judgment. *Id*.

Counterfeiters consult and post information to counterfeiter-defense-oriented websites developed and maintained to provide counterfeiters early notice of recently filed lawsuits. Decl. of Ariel Roth (Roth, Decl.), ¶ 2. Roth Declaration Exhibit A includes screen captures of an exemplary counterfeiter-defense website, which identifies counterfeiting lawsuits initiated by various trademark-holder plaintiffs and provides information, including, among other things: (i) plaintiff/trademark holder names; (ii) trademark registrations being asserted; and (iii) indications as to whether third-party e-commerce payment platforms have started freezing assets. Roth Decl. ¶ 5. These types of websites operate to notify affiliated or similarly-situated counterfeiter-sellers of newly initiated anticounterfeiting lawsuits based on Plaintiff's name alone. Roth Decl. ¶ 6. On information and belief, infringers, such as Defendants, use tools, such as these types of websites, to receive early warning of lawsuits and to react, by transferring, hiding and destroying assets and evidence before a temporary asset restraint is instituted. *Id.*, ¶6-7.

## II. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Asserted Trademarks and NYAN CAT Works. To stop Defendants' sale of Infringing Products, Plaintiff respectfully requests that this Court issue a TRO ordering, among other things and the freezing of Defendants' assets. Without such *ex parte* relief, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

A.     **The Standard for TRO and Preliminary Injunction**

The elements for granting a TRO or preliminary injunction are: (1) likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) irreparable harm if the injunction is not granted. *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 678 (7th Cir. 2012).

If these three conditions have been met, the Court must then must consider the harm that the nonmoving party will suffer and balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* In this balancing of harms the court weighs these factors against one another "in a sliding scale analysis." *Id.* (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)).

B.     **Nyanify Will Likely Succeed on the Merits**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) defendants are not authorized to use the trademark; and (3) defendants' use of the trademark causes a

likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citations omitted). Plaintiff satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Plaintiff's Asserted Trademarks are distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The Asserted Trademarks have been used since 2011. See D.I. 2-3, 2-4, 2-5 (Trademark Registrations attached as Exs. 2 – 5 to the complaint); Torres Decl., ¶¶ 5-8. The registrations for the Asserted Trademarks are valid, subsisting, and in full force and effect. *Id*. The registrations for the Asserted Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Asserted Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the Asserted Trademarks, and none of the Defendants are authorized retailers of genuine NYANIFY Products. Torres Decl., ¶¶ 11-12.

Nyanify also satisfies the third element regarding likelihood of confusion. The Seventh Circuit has held that "[w]here . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion" *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987)). The result is no different when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their

4846-5268-2978                               6

products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.; G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Plaintiff plainly satisfies the likelihood of confusion test. Nyanify submits extensive documentation showing that Defendants use infringing and counterfeit marks identical to the Asserted Trademarks to sell Infringing Products bearing counterfeit copies of the NYAN CAT trademarks. Ex. A to the Werber Declaration provides a comparison of Nyanify's federally registered NYAN CAT logo to an unauthorized product (offered for sale by one of the Defendants) bearing a copy of Nyanify's federally registered NYAN CAT logo.[1] See e.g. Werber Decl. ¶ 2, Ex. A; See Torres Decl. Ex. 1.

Regarding the third factor, Nyanify submits extensive evidence that "there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." See *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001); Torres Decl. Ex. 1; see e.g. Werber Decl. ¶ 2, Ex. A. Both Nyanify and Defendants advertise and use the NYANIFY marks over the Internet and target consumers searching for NYAN CAT.

Regarding the fourth factor, degree of consumer care, potential consumers purchasing NYANIFY Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) ("when a buyer class is mixed, the standard of

---

[1] Personal jurisdiction and venue are proper because Defendants advertise, offer for sale and/or sell Counterfeit NYAN CAT Products to consumers in this District and throughout the United States Torres Decl., at ¶ 10, Ex. 1.

care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class") (citations omitted). As such, this factor favors Plaintiff.

Due to their long-standing use and wide acceptance by the public, the Asserted Trademarks have become associated with high quality NYANIFY Products. Torres Decl., ¶ 9, 20. The Asserted Trademarks are distinctive when applied to the NYANIFY Products. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Plaintiff.

As for the sixth factor, the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992). In this case, actual confusion can be inferred based on the evidence provided. See Torres Decl. Ex. 1; see e.g. Werber Decl. ¶ 2, Ex. A. The seventh and final factor also favors Nyanify. Defendants are intentionally using the NYAN CAT name (precisely as covered by the registered Asserted Trademarks) to confuse and deceive the consuming public. Defendants are purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation. For similar reasons, Nyanify is also likely to succeed on its false designation of origin and Illinois Uniform Deceptive Trade Practices Act claims. See *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994).

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).

Copying can be established through direct evidence, or inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). The test for substantial similarity

"is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) ("[a]lthough not 'virtually identical' to PAC-MAN, K. C. Munchkin captures the 'total concept and feel' of and is substantially similar to PAC-MAN"). The Copyright Act also protects the author's exclusive right "to make derivative works based on their original copyright." *Spinmaster, Ltd.* 404 F. Supp. at 1106. Lastly, "when cartoons or movies are copyrighted, a component of that copyright protection extends to the characters themselves, to the extent that such characters are sufficiently distinctive. *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 597 (8th Cir. 2011).

Nyanify owns valid registrations to each of the NYAN CAT Works. Torres Decl., ¶ 9; D.I. 1-4. Defendants have had access to the NYAN CAT Works, including via the Internet, and have deliberately copied, displayed, distributed, reproduced and made derivative works of the NYAN CAT Works, as displayed in relation to the Defendant Internet Stores and the corresponding Infringing Products in violation of 17 U.S.C. § 501 and 17 U.S.C. § 106(1) - (3), (5). See Torres Decl. Ex. 1. Defendants' images, artwork and derivative works are virtually identical to and/or substantially similar to the NYAN CAT Works. See Complaint Exhibit 4, (D.I. 1-4); Torres Decl., Ex. 1.

    **C.    There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co.,* 233 F.3d at 469; *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F.

Supp. 3d 427, 437 (N.D. Ill. 2019) ("We find that USA Halal's inability to monitor the quality of Best Choice's products . . . represents a real harm that is not merely hypothetical"). Indeed, the law presumes that injuries arising from trademark infringement are irreparable. *Id*. Thus, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' conduct harms plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Torres Decl., ¶¶ 16-21. The extent of the harm is irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law).

"Copyright claims that show a likelihood of success entitle the holder to a rebuttable presumption of irreparable harm." *Spinmaster,* 404 F. Supp. 2d at 1111 (citing *Atari*, 672 F.2d at 620)). Irreparable harm can result from a copyright holder's ability to enforce its exclusive rights and a defendant's likely inability to pay for past or future infringement. See e.g. *MGM Studios, Inc. v. Grokster, Ltd.,* 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007). Thus, Defendants' unauthorized use of Nyanify's original artwork would also cause irreparable harm if an *ex parte* TRO is not issued per Federal Rule of Civil Procedure 65(b)(1). Torres Decl., ¶¶ 16-21.

D.   **The Balancing of Harms Tips in Plaintiff's Favor**

The Court must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). As willful infringers and counterfeiters, Defendants are entitled to little equitable consideration. "When considering the

balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994); see e.g. *Miyano Mach. USA, Inc. v. Miyanohitec Mach.*, Inc., 576 F. Supp. 2d 868, 888 (N.D. Ill. 2008) ("MMU stands to be greatly and irreparably harmed if the preliminary injunction is not granted, whereas MiyanoHitec stands to weather little to no relevant harm if the preliminary injunction is granted"). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Further, "it is not critical that the balance of hardships favors [Nyanify], given the overwhelming evidence and likelihood that Nyanify will succeed on the merits. *Life After Hate, Inc.*, 410 F. Supp. 3d at 910. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

E. **Issuance of the Injunction is in the Public Interest and the Public Interest is Served by Entry of the TRO**

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. *Eli Lilly*, 233 F.3d at 469 (an injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion"). The public is currently under the false impression that Defendants are operating their Defendant Internet Stores and selling the Infringing Products with Plaintiff's approval and endorsement when that is not the case. Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted).

Enforcement of trademark law serves the public interest by reducing consumer confusion. *Ty*, 237 F.3d at 895; *Promatek*, 300 F.3d at 813-14; *Life After Hate, Inc.*, 410 F. Supp. 3d at 911. The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.*, No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion"). Unless Defendants' unauthorized use of the Asserted Trademarks is enjoined, the public will continue to be confused and misled by Defendants' conduct.

### III. The Equitable Relief Nyanify Seeks is Appropriate

The Lanham Act gives this Court authority to issue the requested injunctive relief. 15 U.S.C. § 1116(a) The Courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office"). See also 17 U.S.C § 502 (providing authority to "grant temporary and final injunctions" for copyright infringement. Furthermore, Rule 65(b) provides that the Court "may issue a temporary restraining order without written or oral notice to the adverse party" where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition.

#### A. An *Ex Parte* TRO Restraining Defendants Conduct is Appropriate

Nyanify requests a TRO requiring the Defendants to immediately cease all use and copying of the Asserted Trademarks or substantially similar marks and NYAN CAT Works on or in connection with all Internet stores. Such relief is necessary to stop the ongoing harm to

Nyanify, the Asserted Trademarks, Nyan Cat Works and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Asserted Trademarks. Torres Decl., ¶¶ 19-23. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously from overseas[2] over the Internet. Torres Decl., ¶ 12-13; Werber Decl., ¶¶ 5-8. Nyanify is currently unaware of both the true identities and locations of the Defendants, as well as other Internet stores used to distribute Infringing Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Levi Strauss & Co. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-cv-00189, D.I. 25 (N.D. Ill. Jan. 16, 2020) (granting TRO); *Richemont International SA et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"* No, 1:19-cv-07908, D.I. 28 (N.D. Ill. Dec. 10, 2019) (same); *Rafael Mantesso v. The Partnerships et al*. (granting TRO, Preliminary Injunction and asset restraint based on copyright claims).[3]

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Nyanify requests an *ex parte* restraint of Defendants' assets, and leave to seal these motion papers, so Nyanify's right to a judgment is not impaired.[4] Nyanify has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim which entitles Nyanify the opportunity to seek recovery of defendant's profits, treble damages or statutory damages. See 15 U.S.C. § 1117(a), (b), and (c). Denying such a restraint would provide

---

[2] Nyanify, has good cause to suspect the Defendants primarily comprise residents of other countries, including China. See Torres Decl., ¶ 13, Ex. 1.

[3] Copies of unpublished orders are submitted as Ex. C to the Werber Declaration.

[4] Plaintiff has sought leave to temporarily seal information identifying its name or trademarks for reasons set forth in Plaintiff's Motion for Leave to File Exhibits Under Seal. See Dkt. 5. Plaintiff seeks leave to lodge the present motion papers under seal for the same reasons.

Defendants (who operate their unlawful counterfeiting schemes anonymously from overseas over the Internet) an opportunity to disregard their responsibilities, transfer financial assets to overseas accounts or take other actions to evade judgment. Torres Decl., ¶ 18; Werber Decl., ¶ 5-8. Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). This Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff. *Lorillard Tobacco Co. v. Montrose Wholesale Candies Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) (restraining order against owners of a store selling counterfeit cigarettes); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."). Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely take actions to evade judgment.

C. **Expedited Discovery is Appropriate**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id*. (citation omitted). Further, courts have broad power over discovery and may permit discovery in

order to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2). Nyanify. respectfully requests expedited discovery to discover the bank and payment service accounts Defendants use for their unlawful counterfeiting operations. The expedited discovery requested in the proposed order is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained. See, e.g., Werber Decl., Ex. C (unpublished). Without expedited discovery, any asset restraint would be of limited value because Plaintiff would left without critical information, such as account numbers and email addresses needed to contact the relevant entities and effectuate temporary asset restraints. The third party marketplaces and payment services contemplated in the proposed order have historically cooperated with trademark owners in prior cases and can comply with these expedited discovery requests without undue burden.

## IV. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). See, e.g., Werber Decl. Ex. C *(Levi Strauss & Co. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 20-cv-00189, D.I. 25 (N.D. Ill. Jan. 16, 2020) ($10,000 bond); *Richemont International SA et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"* No, 1:19-cv-07908, D.I. 28 (N.D. Ill. Dec. 10, 2019) (same)).

## V. CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a TRO in the form submitted herewith and set a status hearing before the expiration of the TRO at which hearing Plaintiff intends to present a motion for preliminary injunction.

DATED: July 13, 2021                  Respectfully submitted,

                                                      */s/ Matthew A. Werber*
                                                      Matthew A. Werber (Ill. # 6287658)
                                                      mwerber@nixonpeabody.com
                                                      Ariel Roth (Ill. # 6327096)
                                                      aroth@nixonpeabody.com
                                                      **NIXON PEABODY LLP**
                                                      70 W. Madison St., Suite 3500
                                                      Chicago, IL 60602
                                                      Tel: (312) 977-4400
                                                      Fax: (312) 977-4405

                                                      ***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

     I, the undersigned attorney, certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on July 13, 2021.

                                */s/ Matthew A. Werber*
                                Matthew A. Werber